KOBE IMPORT CO. *v.* UNITED STATES (No. 4857)[1]

United States Court of Customs and Patent Appeals, June 20, 1956

*Jordan & Klingaman (Edward F. Jordan* of counsel) for appellant.

*Warren E. Burger,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section *(Daniel I. Auster,* trial attorney, of counsel), for the United States.

[Oral argument April 10, 1956, by Mr. Jordan and Mr. Auster]

Before JOHNSON, Acting Chief Judge, and WORLEY, COLE, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal in a reappraisement proceeding from the judgment of the United States Customs Court, Second Division, entered pursuant to its decision A. R. D. 60.

The imported merchandise consists of imitation pearls, cultured pearls, and glass spectacle lenses, originating in Japan and shipped to Shanghai, China, where they were purchased by the Kobe Import Co., appellant here, and imported by that company into the United States. The merchandise was appraised as an export of Japan, on the basis of export value in that country, under the provisions of section 402 (d) of the Tariff Act of 1930.

The single judge of the United States Customs Court, sitting in reappraisement, agreed with the importer that the merchandise was

exported from China rather than Japan, and found the export values to be the invoice unit prices.

Upon review, the Second Division of the United States Customs Court agreed the merchandise was properly an export of China, but reversed the holding of the trial judge that the export values were the invoice unit prices. Although the single judge described appraisal of the merchandise as an export of Japan as "a clear violation of the statute," and the appellate division referred to it as "clearly in violation of the statute, and no presumption of correctness attaches to such action by the appraiser," the court stated:

> Based upon this record, and following the pronouncements in the *Brooks Paper Company* case, *supra* [40 C. C. P. A. (Customs) 38, C. A. D. 495], we must hold that the importer herein has failed to establish one of the material issues in this case, to wit, the usual wholesale quantity in which such or similar merchandise to that here involved was freely offered for sale to all purchasers in the principal markets of China. Since appellee has failed to establish the usual wholesale quantity, then, in accordance with the foregoing, it seems clear that it has failed to meet its burden of proof, and the valuation set by the appraiser must stand, even though it is established by this record that said appraisement was erroneous.

The pertinent portions of the Tariff Act of 1930 are as follows:

Sec. 402. Value.

(a) Basis.—For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

*     *     *     *     *     *     *

(d) Export Value.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Sec. 500. Duties of Appraising Officers.

(a) Appraiser.—It shall be the duty of the appraiser * * *

(1) To appraise the merchandise * * * by ascertaining or estimating the value thereof by all reasonable ways and means in his power * * *.

Sec. 501.

* * * The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

Sec. 501, as amended by the Customs Administrative Act of 1938 (U. S. C. title 19, sec. 1501.)

* * * Every such appeal * * * shall be assigned to one of the judges, who shall in every case, notwithstanding that the original appraisement may for any reason be held invalid or void * * * determine the value of the merchandise from the evidence in the entry record and that adduced at the hearing. * * *.

Appellant urges here, among other things, that the action of the appraiser was invalid or void rather than merely erroneous or incorrect, consequently the importer was not under the same burden of proof as if the appraisements were valid but still erroneous or incorrect.

While, as above indicated, both the single judge and the appellate division held the original appraisement to be in violation of the statute, neither of them expressly held it to be void. In our opinion, for the reasons appearing below, it is unnecessary to decide that particular question.

It seems to us the basic question to be decided here is expressed in appellant's sixth assignment of error in which it is alleged that the appellate division erred

In holding that the testimony of Louis Josephson together with the conclusory statements contained in exhibit 2 [the Chen affidavit] is not sufficient to establish any value for the involved merchandise.

That question directly involves the applicability of our decision in *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, relied on by the appellate division. The Government in its brief also relies on *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593, which is somewhat similar to the *Brooks* case and the instant appeal.

Both cases hold that it is incumbent on an importer who challenges an appraisement not only to show the appraisement to be incorrect, but to establish, by proper evidence, the correct appraisal value; and that mere statements of ultimate conclusions, as distinguished from proper evidentiary facts, do not constitute proper evidence in such cases. It is clear, however, that the *Brooks* and *Kobe* decisions are not applicable to a situation where the importer establishes, by competent and sufficient evidence, what the appraisal value should be. It is therefore necessary to consider whether the evidence offered by the importer in the instant case is sufficient to establish the export value of the merchandise as an export of China since, as noted by the trial judge, the parties are agreed that export value is the proper basis of valuation.

The evidence offered by the importer comprises the testimony of one Louis Josephson, a partner in the Kobe Import Company, and an affidavit by C. Y. Chen, who acted as a commissionaire for the company in Shanghai.

The trial court stated that "The record is not satisfactory in all respects" but, without discussing the evidence further, found the proper export values to be the invoice unit prices, and the five percent commission paid to a commissionaire was not a part of the export value. The latter finding is clearly supported by the record and need not be further considered.

The appellate division held that the Chen affidavit was insufficient to establish "the usual wholesale quantity in which such or similar merchandise to that here involved was freely offered for sale to all purchasers in the principal markets of China" for the reason that it stated only conclusions as to that matter, and not evidentiary facts. With respect to the testimony of Josephson, the appellate division found that it established nothing as to the proper values of the merchandise except that the prices shown on the invoices are those actually paid.

As to the insufficiency of the Chen affidavit, the holding of the appellate division is in accord with the majority view in *Kobe Import Co. v. United States, supra*, in which an identical affidavit was considered. It appears the witnesses there testified on behalf of the importer "that these prices were actually paid for the merchandise." However, in our opinion, the testimony of Josephson in the instant case went much further than merely fixing the price actually paid for the goods.

A part of Josephson's testimony follows:

Q. These three shipments were purchased from Maru & Co. Did you have any financial interest in Maru & Company? A. Never.

\* \* \* \* \* \* \*

Q. Please answer the question. What was the relationship between you and Maru & Company? A. It was just an ordinary Japanese businessman that goes around to get orders from customers.

\* \* \* \* \* \* \*

Q. Did you have any special arrangement with Maru whereby you were to get a better price than anybody else in the open market? A. *No, in no case did he give me a better price than anybody else.* If I didn't want a lot of goods, he used to sell it to somebody else. (Italics supplied.)

\* \* \* \* \* \* \*

Q. Mr. Josephson, in your experience in the Market in Shanghai, will you state whether the quantities you purchased from Mr. Maru of the lenses, and the imitation pearls, and the cultivated pearls, whether they were abnormally large or abnormally small, or usual, or ordinary, ordinary wholesale quantities? A. *Usually ordinary wholesale quantities. The way we have been used to buying them, they were that way.* They were nothing extraordinary. (Italics supplied.)

\* \* \* \* \* \* \*

R. Q. Mr. Josephson, based on your several years residence, and doing business in Shanghai, China, please state whether or not Shanghai is the principal market in China, or was at that time, for the imitation pearls, the cultivated pearls and the lenses covered by these shipments, and similar merchandise? A. Shanghai was considered——.

R. Q. Please just answer the question. A. Yes.

R. Q. It was the principal market? A. Yes.

Josephson had been in business in Shanghai for several years prior to the purchase of the merchandise and his testimony indicates that he was generally familiar with market conditions there. There is nothing to refute or discredit his testimony that Shanghai was the principal market in China for merchandise such as involved here; that he was given no better price in purchasing such merchandise

than anyone else; and that he purchased the merchandise in ordinary wholesale quantities. While some of Josephson's testimony may, in a sense reflect his opinions rather than the ultimate facts on which they are based, that is by no means unusual. It is frequently impossible to draw a sharp distinction between conclusions and ultimate evidentiary facts. Thus in Wigmore on Evidence, 1904 Edition, Section 1919 it is said that:

We may in ordinary conversation roughly group off distinct domains for "opinion" on one hand and "fact" or "knowledge" on the other; but as soon as we come to analyze and define these terms for the purpose of that accuracy which is necessary in legal rulings, we find that the distinction vanishes, that a flux ensues and that nearly everything which we choose to call "fact" either is or may be only "opinion" or inference.

In the present case, Josephson's testimony was given in the presence of opposing counsel, and no objection was made to any of the questions or answers quoted above. He was also cross-examined at length, but no attempt was made to rebut, discredit, or limit his testimony as to what constituted usual wholesale quantities. As observed by the trial judge:

The cross-examination of this witness failed to weaken his direct testimony, the pertinent points of which were confirmed by the affidavit of Chen * * *.

It would immeasurably prolong testimony in most cases if every witness were required to state the reasons for every ultimate fact on which his opinions were based. Accordingly, in the interest of expediency, witnesses frequently state opinions or conclusions and, if opposing counsel considers them improper, he may object, or call for statements of the fact on which they are based. Such a situation differs from that in the *Brooks* case, *supra*, where the conclusion is stated in an affidavit, and there is no opportunity to object to it or to call for the facts on which it is based.

It is to be noted that the only alternative to adopting the invoice unit prices as the proper export values is to accept the original appraisement, based on values in Japan, with respect to which the appellate division found that "the appraisement of the involved merchandise, based upon the value of such or similar merchandise exported from Japan, and the involved merchandise being an exportation from China, was clearly in violation of the statute, and no presumption of correctness attaches to such action by the appraiser."

Under all the circumstances of this case we are of the opinion that the finding of the trial court that the export values of the merchandise are the invoice unit prices was proper, and was sufficiently supported by the evidence. The importer, therefore, has sustained its burden and it is accordingly unnecessary to consider whether the original appraisement was void or merely erroneous.

Accordingly, it becomes necessary to *reverse* the judgment appealed from and to *remand* the cause to the Customs Court for further proceedings consistent with the views expressed herein.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL, J., because of illness, did not participate in the hearing or decision of this case.

JOHNSON, J., dissents.